UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

DONALD JOSEPH McARTHUR,

                                        **DECISION AND ORDER**
                    Plaintiff,          **No. 13-CV-6369T**

          vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## INTRODUCTION

Donald Joseph McArthur ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Before the Court are Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and the Commissioner's motion for remand pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On July 23, 2010, Plaintiff protectively filed an application for DIB and SSI benefits, alleging disability since November 1, 2007, due to torn rotator cuffs, shortness of breath,

high blood pressure, and constant fatigue. T.155-61.[1] Following denial of his claim on October 12, 2010, T.84-99, Plaintiff requested an administrative hearing. On December 16, 2011, Plaintiff appeared with counsel for a hearing before Administrative Law Judge Connor O'Brien ("the ALJ") in Rochester, New York. T.36-62.

On February 22, 2012, the ALJ issued a decision, finding that Plaintiff was not disabled as of November 1, 2007, the alleged onset disability date, but that he was disabled as of December 26, 2010. T.10-22. On May 20, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T.1-3. Plaintiff timely commenced this action.

In his motion, Plaintiff challenges the ALJ's decision that he was not disabled from November 1, 2007, through December 26, 2010. Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is erroneous because the ALJ failed to give the opinion of treating physician Dr. Stornelli controlling weight and improperly substituted her opinion for that of Dr. Stornelli's. Plaintiff requests reversal of the Commissioner's decision and remand solely for the calculation of benefits. The Commissioner concedes that the ALJ erred in

---

[1]      Numerals preceded by "T." refer to pages in the transcript of the administrative transcript, submitted as a separately-bound exhibit by Defendant.

applying the treating physician rule and argues that remand is appropriate because the record does not contain persuasive evidence of disability.

For the reasons set forth below, the Commissioner's motion is granted, and the matter is remanded for administrative further proceedings.

## FACTUAL BACKGROUND

### I.   Plaintiff's Testimony

Born on December 27, 1955, Plaintiff was 51-years-old on the alleged onset date. T.192. He has a ninth grade education and has worked in the past as a laborer and painter. T.215. Plaintiff can read and write in English, but he has trouble with basic math. Plaintiff testified that he worked in a deli from 1996 until 2000; for the New York State Department of Labor in the Bureau of Public Works in 2000; and cleaning airplanes in 2001. T.45-46. Plaintiff performed odd jobs between 2002 and 2007, such as painting and driving to pick up materials. T.44.

Plaintiff testified that it is difficult to drive for long distances without stopping to stretch his back. T.41. On his way to the hearing, his car broke down about one mile from the hearing office, and he had to walk the rest of the way. He estimated that he stopped about five or six times due to pain. He only could walk about two and a half blocks before his legs would tighten. T.58.

Plaintiff testified that he wakes up during the night due to right shoulder and hip pain. T.51. His neighbors help him shovel the driveway, work on his car, and mow the lawn. T.52-53. He can shower and prepare meals for himself. T.55. He does laundry in small loads because he cannot carry a laundry basket and walk. T.56. He uses a portable cart to bring groceries to and from his vehicle. Id. Plaintiff can lift a gallon of milk to waist height only. Id. He can bend over to the floor. T.57. He can stand and wash the dishes for five to ten minutes, but experiences sharp pain in his back afterwards. T.59. He can extend his right arm straight out in front of him, but he cannot raise his right hand above his shoulder without pain. Id. He was not working because of back pain and difficulty in walking quickly and carrying items. T.42-43, 50-51. He has been on blood pressure medication for several years and muscle relaxers for his back pain. T.60-61.

**II.   Medical Evidence**

    **A.   Plaintiff's Medical Records**

On August 30, 2007, Plaintiff was admitted to Rochester General Hospital for chest pain. See T.305-06. He had taken cocaine that day and was also on blood pressure medication. A stress echocardiogram showed mild left ventricular hypertrophy and a hypertensive blood pressure. He was discharged the next day.

4

On September 14, 2007, Plaintiff saw his primary care physician, David Stornelli, M.D., who noted that Plaintiff's high blood pressure was uncontrolled. T.270. Plaintiff had abstained from cocaine since leaving the hospital and had reduced his alcohol consumption. Id.

On January 21, 2008, Dr. Stornelli observed that Plaintiff had high blood pressure, elevated cholesterol levels, and finger numbness, and he increased Plaintiff's dosage of high blood pressure medication and scheduled a nerve conduction study. T.271.

On January 22, 2008, Plaintiff saw neurologist Michael G. Dunn, M.D., for pain in his lateral right upper arm through the forearm into his hand. See T.288-90. Plaintiff had numbness in his fingertips and right shoulder pain, and a minimally positive Phalen's sign bilaterally and possible weakness in the deltoid and infraspinatus. Testing revealed mild chronic denervation in the abductor pollicis brevis (a muscle in the thumb) and mild underlying polyneuropathy. T.290. Plaintiff was given a right wrist splint and elbow pad. Id.

On February 4, 2008, Plaintiff saw gastroenterologist George Y. Kunze, M.D., for rectal bleeding, itchiness, and soreness. See T.286-87. He also had joint stiffness, right arm pain, occasional neck pain, and upper extremity numbness and tingling. Dr. Kunze opined that Plaintiff had hemorrhoidal bleeding.

On February 14, 2008, Plaintiff returned to neurologist Dr. Dunn. See T.284-85. Plaintiff was having increased pain in his right bicep and increased numbness in his right hand. His right leg was "jumping" when he crossed it over his left leg at night. Plaintiff had been wearing a wrist splint for carpal tunnel syndrome. Noting that Plaintiff's symptoms had worsened and that he might be myelopathic, Dr. Dunn increased Plaintiff's dosage of Neurontin.

On February 26, 2008, Plaintiff saw Dr. Stornelli with complaints of continued neck and shoulder pain. T.269. Dr. Stornelli noted that Plaintiff's right upper extremity symptoms were improving and that he had started physical therapy for the right shoulder. Plaintiff continued to wear a wrist splint. His high blood pressure had improved with medication.

On March 27, 2008, an MRI of Plaintiff's cervical spine revealed "fairly impressive" multilevel degenerative disease with a slight kyphotic deformity at C5 and multilevel disc space narrowing with spondylosis. T.329. There was no spinal cord compression, but there was evidence of advanced dominant lateral recess encroachment at C5-6 on the right and at C4-5 and C3-4 on the left. T.330. There were lesser bilateral findings at C6-7. Dr. Dunn noted that Plaintiff tried physical therapy and "felt that he was worsening." T.283. An MRI of Plaintiff's neck showed

significant neuroforaminal encroachment and compression of the existing C6 root. Id.

On June 27, 2008, Dr. Stornelli noted that Plaintiff's blood pressure was well-controlled with medication and that his neck pain had resolved with physical therapy and exercises. T.268.

About two years later, on January 25, 2010, Plaintiff saw Dr. Stornelli for right arm numbness, pain in his elbow and shoulder, and ankle and leg cramps. T.267. Dr. Stornelli indicated that Plaintiff's high blood pressure was no longer well-controlled with medication. He also noted that Plaintiff had right shoulder pain and upper extremity numbness. Dr. Stornelli referred Plaintiff to a physical therapist, recommended wrist splints for suspected carpal tunnel, and ordered that Plaintiff resume high blood pressure medication. Id.

On September 22, 2010, Plaintiff was examined by Samuel Balderman, M.D., a consultative examiner for the Social Security Administration. See T.262-66. Plaintiff had shoulder pain, hypertension, shortness of breath, and fatigue. He reported intermittent shoulder pain and aches for one year and that medication provided partial relief. He could slowly walk half a flight of stairs and on flat surfaces.

Dr. Balderman noted that Plaintiff was not in acute distress and that his gait was normal. Plaintiff walked on his heels and toes with some difficulty balancing. His squat was 80-percent,

his stance was normal, and he did not need help changing for the examination. Plaintiff did not need help getting on and off the examination table, and he could rise from a chair without difficulty. His cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. His lumbar spine showed flexion to 80 degrees, but he had good lateral and rotary movements. He had mild pain in his shoulders with full range of motion. He had a full range of motion in his elbows, forearms, wrists, hips, knees, and ankles. An x-ray of Plaintiff's right shoulder was negative. T.266. Dr. Balderman diagnosed Plaintiff with shoulder pain and hypertension. He opined that Plaintiff's prognosis was "stable" and that he would have minimal to mild limitations reaching, pushing, and pulling due to shoulder pain. T.264.

On June 7, 2011, Plaintiff saw Dr. Stornelli for continued back, leg, and bilateral shoulder pain. Plaintiff reported that he was having trouble walking down stairs and lifting grocery bags. His sleep was interrupted every 90 minutes at night because of pain. Dr. Stornelli reported that Plaintiff looked mildly uncomfortable, that he had difficulty standing from a chair, and that his gait was mildly antalgic and stiff. Plaintiff had a decreased range of motion in his lumbar spine. Dr. Stornelli prescribed pain medication and physical therapy. T.326.

On July 13, 2011, Plaintiff underwent diagnostic imaging on his right shoulder which revealed mild degenerative changes of the right shoulder with mild arthropathy of the right acromioclavicular joint and right glenohumeral joint spaces. There were small subchondral cysts on the right humeral head. T.331. Diagnostic imaging of the lumbar spine revealed moderate degenerative changes throughout. T.344.

On July 15, 2011, Plaintiff saw Dr. Stornelli for right shoulder pain, stating that he had tripped going down the stairs. Plaintiff continued to have trouble with prolonged standing. Examination of the right shoulder revealed a decreased active range of motion and weakness on abduction. Dr. Stornelli opined that Plaintiff had a rotator cuff tear and lower back pain/lumbago and referred him to an orthopedic surgeon. T.346.

**B.    Treating Source Opinion**

On December 21, 2011, Dr. Stornelli completed a physical RFC questionnaire regarding Plaintiff's impairments. See T.353-57. Dr. Stornelli noted that Plaintiff had hypertension, GERD, low back pain, arthritis, and spinal stenosis, and alcohol abuse disorder. He opined that Plaintiff's prognosis was poor. Plaintiff's symptoms included chronic low back pain, bilateral leg pain, right shoulder pain, nocturnal leg cramps, and numbness and tingling of the right hand. Plaintiff had dull aching pain in his lower extremities due to ambulation. He also had an antalgic

gait and experienced dizziness as a side effect of his medications (meloxicam, gabapentin, and Tramadol). Dr. Stornelli opined that Plaintiff's impairments would constantly interfere with the attention and concentration needed to perform simple work tasks; and that he could tolerate only low stress jobs. Dr. Stornelli estimated that Plaintiff could walk two blocks without rest or severe pain. See T.354.

Dr. Stornelli reported that Plaintiff could sit for 30 minutes at a time before needing to get up, and that he could stand for 15 minutes at a time before needing to sit down or walk around. In an eight-hour workday, Plaintiff could stand/walk for less than two hours total and could sit for about two hours total. Plaintiff would need to walk every 30 minutes for about five minutes at a time. Dr. Stornelli noted that Plaintiff would frequently have to take unscheduled breaks during the workday. See T.354-55.

Dr. Stornelli opined that Plaintiff could occasionally lift up to ten pounds, but that he could rarely lift 20 pounds and could never lift 50 pounds. He could occasionally look down, turn his head right or left, look up, and hold his head in a static position. Plaintiff could occasionally twist, stoop, and climb stairs. He could rarely crouch, squat, or climb ladders. He also had significant limitations with reaching, handling, or fingering. See T.355-56.

Dr. Stornelli opined that Plaintiff was likely to be absent from work more than four days per month due to his impairments. Plaintiff had been unable to hold steady work in construction or painting because he had chronic musculoskeletal pain. Dr. Stornelli opined that Plaintiff's major limiting factor was moderate spinal stenosis, and that it was unlikely his condition would improve. Dr. Stornelli indicated that "2007" was the earliest date to which the symptoms and limitations described in the questionnaire applied. See T.357.

### III. **The ALJ's Decision**

In her decision, the ALJ followed the five-step analysis established by the Administration for evaluating disability claims. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 26, 2010, the onset date. T.17. Plaintiff met the insured status requirements of the Act through December 31, 2007. T.16.

According to the regulations, a person in age range of 50 to 54 years-old is "closely approaching advanced age," and the Commissioner "will consider that [the claimant's] age along with a severe impairment(s) and limited work experience may seriously affect [the] ability to adjust to other work." 20 C.F.R. §§ 404.1563(d), 416.963(d). Before December 26, 2010, Plaintiff was "closely approaching advanced age." T.20. On December 26,

2010, however, Plaintiff's age category changed to "advanced age." T.20. A person aged 55 years-old or older is of "advanced age," and the Commissioner will consider that "age significantly affects a person's ability to adjust to other work." 20 C.F.R. §§ 404.1563(e), 416.963(e).[2]

At steps two and three, the ALJ concluded that Plaintiff has had the following severe impairments since November 1, 2007: degenerative joint disease of the right shoulder, degenerative disc disease of the cervical spine, hypertension, and alcohol addiction. T.17. She found, however that none of Plaintiff's severe impairments, alone or in combination, met or medically equaled any listed impairment set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

At step four, the ALJ concluded that, from November 1, 2007, to December 26, 2010, Plaintiff had the RFC to perform light work,[3] except that he could only lift 15 pounds occasionally.

---

[2]    Special rules apply to persons of advanced age. If a claimant is of "advanced age" and has a "severe impairment(s) that limits [him] to sedentary or light work," the Commissioner "will find that [the claimant] cannot make an adjustment to other work unless [he] [has] have skills that [he] can transfer to other skilled or semiskilled work . . . . 20 C.F.R. § 404.1568(d)(4).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

T.17. She also found that Plaintiff could not perform his past relevant work. T.19.

At step five, the ALJ found that, prior to December 26, 2010, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. T.20.

Beginning on December 26, 2010, however, when Plaintiff entered the "advanced age" category, the ALJ found that there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. T.21. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act before December 26, 2010, but that he became disabled on that date and continued to be disabled through the date of her decision. T.21. Because the ALJ found that Plaintiff was not disabled until he reached advanced age on December 26, 2010, he was not disabled before the date last insured (December 31, 2007), and his DIB application therefore was denied. T.17, 21.

## **DISCUSSION**

## I.  **Jurisdiction and Scope of Review**

Pursuant to 42 U.S.C. § 405(g), a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The scope of the district court's review of such cases is limited to two inquiries: determining if the Commissioner's findings are supported by substantial evidence in the record as a whole, and if the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam) ("It is not the function of the reviewing court to try the case de novo but, assuming the Secretary has applied the correct legal standards, to decide whether the Secretary's decision is supported by substantial evidence.") (citations omitted).

## II.  **The Parties' Motions**

### A. Erroneous RFC Assessment

Plaintiff contends that the ALJ erred in assessing his RFC by failing to afford controlling weight to the medical source statement of his treating physician, Dr. Stornelli. Both Plaintiff and the Commissioner agree that the ALJ erred in applying the treating physician rule. The Commissioner urges remand while Plaintiff seeks reversal of the ALJ's decision and remand for payment of benefits.

The "treating physician rule" instructs the ALJ to give controlling weight to the opinions of a claimant's treating physician, as long as the opinion is well-supported by medical

findings and is not inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ cannot discount a treating physician's opinion unless it "lack[s] support or [is] internally inconsistent." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Furthermore, the ALJ may not "arbitrarily substitute [her] own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

Where the ALJ does not give a treating physician's opinion on the nature and severity of a claimant's disability "controlling" weight, she must "comprehensively set forth [her] reasons for the weight assigned to [the] treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)) (internal quotation marks omitted). The regulations specify that the Commissioner "'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." Id. (quoting 20 C.F.R. § 404.1527(d)(2); alterations in original; other citations omitted). "An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion[,]" Halloran, 362 F.3d at 28 (citing 20 C.F.R. § 404.1527(d)(2)), including (1) the frequency of examination and the length,

nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other factors brought to the Administration's attention that tend to support or contradict the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

The parties do not dispute, and the Court agrees, that Dr. Stornelli, Plaintiff's primary care doctor since 2003, qualifies as a treating physician. See Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) ("Whether the 'treating physician' rule is appropriately applied depends on 'the nature of the ongoing physician-treatment relationship.'") (quoting Schisler v. Bowen, 851 F.2d 43, 45 (2d Cir. 1988)). As noted above, at the ALJ's specific request, see T.73-76, Dr. Stornelli completed a medical source statement. His statement, dated December 21, 2011, listed Plaintiff's disabling impairments as chronic low back pain, bilateral leg pain, right shoulder pain, and numbness/tingling in his right hand. Dr. Stornelli indicated that "2007" was the earliest date that the description of the symptoms and limitations described in the questionnaire applied. T.357. As noted above, Plaintiff's date last insured is November 1, 2007. In particular, Dr. Stornelli opined that that due to his impairments, Plaintiff could stand and/or walk for less than two hours per day only, while the ALJ found that Plaintiff could

perform light work and could stand and/or walk for four hours per day. Dr. Stornelli opined that Plaintiff could sit for two hours per day only, whereas the ALJ found that Plaintiff could sit for six hours per day. See T.355, T.17.

The ALJ concluded that Dr. Stornelli's opinion was entitled to "some weight." T.19. However, it is not clear to this Court that any weight was afforded to Dr. Stornelli's restrictive assessment of Plaintiff's limitations. The ALJ found that she "cannot fully credit" Dr. Stornelli's opinion because it is "inconsistent with the contemporaneous records, which reflect positive responses to treatment[,]" T.19 (citing Exhibit ("Ex.") 3F, p. 2).[4] In addition, the ALJ noted, "much of the treatment records reflect limitations due to alcohol abuse rather than pain." T.19.

The Commissioner has "acknowledge[d] legal error in this case," based on the ALJ's failure to more fully address Dr. Stornelli's "extremely restrictive" assessment. Defendant's Memorandum of Law ("Def's Mem.") (Dkt #15-1) at 3. The Commissioner argues that that "the ALJ's assessment of the treating physician's opinion is not adequate" because "the ALJ did not discuss the functional limitations" set out in the opinion, and thus the Court "will not be able to review the part

---

[4] Ex. 3F comprises office treatment records from Dr. Stornelli dated March 31, 2003, to October 5, 2010. T.267-313.

of the report containing functional limitations." Id. at 3-4
citing Halloran, 362 F.3d at 33 ("We do not hesitate to remand
when the Commissioner has not provided 'good reasons' for the
weight given to a treating physicians opinion and we will
continue remanding when we encounter opinions from ALJ's that do
not comprehensively set forth reasons for the weight assigned to
a treating physician's opinion."). Here, the Commissioner has not
argued that the error was harmless. See, e.g., Ryan v. Astrue,
650 F. Supp.2d 207, 217 (N.D.N.Y. 2009) (noting cases in this
Circuit finding that ALJ's failure to afford weight to a treating
physician was harmless error when an analysis of weight by the
ALJ would not have affected the outcome) (citations omitted).
Instead, the Commissioner urges remand as the appropriate remedy,
asserting that the record does not contain persuasive evidence of
disability. See Def's Mem. at 4 (citation omitted).

Plaintiff argues that the evidence does establish that his
disability, "reflected by Dr. Stornelli's report", relates back
to November 1, 2007, the date last insured. Plaintiff's Reply
Memorandum of Law ("Pl's Reply") (Dkt #16), p. 2 of 4. However,
the record reveals that Plaintiff had only one office visit to
Dr. Stornelli in 2007, on September 14th. T.270. His documented
complaints were high blood pressure, cocaine-induced chest pain,
and acid reflux. Id. Plaintiff's right upper extremity and back
pain appears to have been mentioned for the first time in

Dr. Stornelli's treatment records on January 21, 2008, in a treatment note from neurologist Dr. Dunn, whom Plaintiff had seen on referral by Dr. Stornelli. T.288-90. Subsequent treatment notes from Dr. Dunn, copies of which were received by Dr. Stornelli, indicate worsening of Plaintiff's right upper extremity and cervical symptoms. See, e.g., T.329 (March 27, 2008 MRI of Plaintiff's cervical spine revealed "fairly impressive" multilevel degenerative disease); T.283 (March 27, 2008 note from Dr. Dunn noting Plaintiff felt symptoms "worsening" after physical therapy). As the ALJ stated in her decision, during his June 27, 2008 visit to Dr. Stornelli, Plaintiff had reported resolution of his neck pain following physical therapy. However, Plaintiff also was experiencing significant arm and shoulder pain during this time, which was not mentioned in Dr. Stornelli's June 27th treatment note. See T.285 (February 14, 2008 note from Dr. Dunn noting Plaintiff's "complex" presentation due to his neck pain with radicular symptoms into the right arm, and right shoulder pathology that "confounds" the neck pain). Thus, the record is consistent with Dr. Stornelli's report, which attributes Plaintiff's disability to his right upper extremity symptoms and does not mention neck pain).

After reviewing the record, the Court determines that remand rather than reversal for calculation of benefits is appropriate in this case since the record also contains conflicting competent

19

medical evidence regarding whether Plaintiff's impairments were of a disabling severity prior to November 1, 2007, the date last insured. For example, consultative physician Dr. Balderman, in his report dated September 22, 2010, found that Plaintiff had full range of motion in his shoulders and opined that Plaintiff had minimal to mild limitation in his reaching, pushing, and pulling due to his shoulder pain. T.264.

Remand solely for calculation of benefits is not appropriate because the Court cannot conclude that "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). The duties of reviewing the record, weighing conflicting evidence, and drawing conclusions as to Plaintiff's RFC fall to the ALJ in the first instance. Clark v. Commissioner, 143 F.3d 115, 118 (2d Cir. 1998). Given that the ALJ erred at step four in assessing Plaintiff's RFC, the new RFC determination will affect the ALJ's analysis at step five. Consequently, the Court finds that remand for further administrative proceedings is appropriate. See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 1999) ("[A] remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five.").

In sum, by discounting Dr. Stornelli's opinion, without evaluating the regulatory criteria or providing "good reasons" in her decision, the ALJ improperly applied the treating-physician rule. See, e.g., Scott v. Astrue, No. 09-CV-3999 (KAM)(RLM), 2010 WL 2736879, at * (E.D.N.Y. July 9, 2013) (remanding where "although the ALJ considered the purported inconsistency of [the treating source]'s opinion with the rest of the record, the ALJ failed to comprehensively set forth 'good reasons' when deciding to give [that] . . . opinion less than significant weight or to explain what weight he gave the opinion") (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)); Gray v. Astrue, No. 1:06-CV-0456 (NAM), 2009 WL 790942, at *16 (N.D.N.Y. Mar. 20, 2009) (similar). Remand is necessary so that the ALJ can evaluate Dr. Stornelli's report in light of the required factors in 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), and, if the ALJ again declines to afford it controlling weight, provide "good reasons" for that decision. The ALJ should provide a clear and explicit statement of what affirmative weight is given to what, if any portions, of Dr. Stornelli's opinion; and provide a clear and explicit statement of the "good reasons" for the weight given to Dr. Stornelli's opinion in light of the foregoing discussion. The ALJ must then reassess Plaintiff's RFC and conduct the required step five analysis. The determinations necessary at steps four and five cannot be made by the Court in this case.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for remand is granted, and Plaintiff's motion is denied to the extent it seeks reversal and remand solely for the calculation and payment of benefits. The matter is remanded for further administrative proceedings consistent with this Decision and Order.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Court Judge


DATED:     November 3, 2014
           Rochester, New York